Joel B. Robbins (011065)
Jesse M. Showalter (026628)
**ROBBINS & CURTIN, p.l.l.c.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Tel: (602) 400-4400
joel@robbinsandcurtin.com
jesse@robbinsandcurtin.com
*Attorneys for Plaintiff Diamond Warren*

Benjamin L. Crump (FL 72583)
**BEN CRUMP LAW, PLLC**
122 S. Calhoun Street
Tallahassee, Florida 32301
Tel: (850) 224-2020
court@bencrump.com
*Pro Hac Vice Admission Forthcoming*
*Attorneys for Plaintiff Diamond Warren*

Lincoln Combs, (025080)
**O'STEEN & HARRISON**
300 W. Clarendon Avenue, Suite 400
Phoenix, Arizona 85013
Tel: (602) 252-8888
lcombs@vanosteen.com
*Attorneys for Plaintiff Robert Yates*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Diamond Warren in her capacity as guardian and next friend to KTW, and in her capacity as Special Administrator of the Estate of Akeem Terrell; and Robert Yates, | No. _____ |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| Sheriff Paul Penzone, in his capacity as the elected Sheriff of Maricopa County; Maricopa County, a political subdivision of the State of Arizona; City of Phoenix, a municipality; Nathan Bulldis, an individual; Gustavo Corrales, an individual; James | **(Tort-Civil Rights-42 U.S.C. § 1983)** (Jury Trial Demanded) |

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ◆ Fax: (602) 265-0267

1
2
3
4

Jessen, an individual; Alexander Kubes, an individual; Andrew Locascio, an individual; Airrion Moses, an individual; Isaac Perez, an individual; Danny Rubio, an individual; and Michael Wood, an individual,

Defendants.

5

6     Plaintiffs allege as follows:

7                              **PARTIES**

8     1.      At the time of his death, Akeem Terrell was a resident of Maricopa County,
9  Arizona.

10    2.      Plaintiff KTW is the minor child of Akeem Terrell and is a statutory
11 beneficiary pursuant to A.R.S. § 12-611, *et seq*. KTW resides in the State of Michigan.

12    3.      Plaintiff Diamond Warren is the mother of KTW and brings this action as
13 KTW's guardian and next friend and as the Special Administrator of the Estate of Akeem
14 Terrell. Ms. Warren is a resident of the State of Michigan.

15    4.      Plaintiff Robert Yates is the surviving father of Akeem Terrell and is a
16 statutory beneficiary pursuant to A.R.S. § 12-611, *et seq*. Mr. Yates resides in the State of
17 Michigan.

18    5.      Defendant Sheriff Paul Penzone is the elected Sheriff of Maricopa County,
19 Arizona. Defendant Penzone is responsible for the acts and omissions of his employees
20 acting within the scope and course of their employment, including employees of the
21 Maricopa County Sheriff's Office ("MCSO") and the Maricopa County Jail.

22    6.      Defendant Maricopa County is a political subdivision of the State of Arizona.
23 Maricopa County is responsible for the acts and omissions of its employees acting within
24 the scope and course of their employment, including employees of Correctional Health
25 Services.

26    7.      Defendant City of Phoenix is a municipality organized under the laws of the
27 State of Arizona. The City of Phoenix is responsible for the acts and omissions of its

28

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

1   employees acting within the scope and course of their employment, including Officers of

2   the Phoenix Police Department.

3          8.      At all relevant times, all Defendants were Police Officers, Sheriff's Deputies,

4   Detention Officers, or municipal entities who were acting under color of state law.

5          9.      Nathan Bulldis is an individual and a citizen of Arizona.

6          10.     At all times alleged in the Complaint, Nathan Bulldis was a detention officer

7   employed by the Maricopa County Sheriff's Office acting within the course and scope of his

8   employment, and under color of state law. He is a "state actor" as that term is used under the

9   jurisprudence of 42 U.S.C. § 1983.

10         11.     Gustavo Corrales is an individual and a citizen of Arizona.

11         12.     At all times alleged in the Complaint, Gustavo Corrales was a police officer

12  employed by the City of Phoenix acting within the course and scope of his employment, and

13  under color of state law. He is a "state actor" as that term is used under the jurisprudence of

14  42 U.S.C. § 1983.

15         13.     James Jessen is an individual and a citizen of Arizona.

16         14.     At all times alleged in the Complaint, James Jessen was a police officer

17  employed by the City of Phoenix acting within the course and scope of his employment, and

18  under color of state law. He is a "state actor" as that term is used under the jurisprudence of

19  42 U.S.C. § 1983.

20         15.     Alexander Kubes is an individual and a citizen of Arizona.

21         16.     At all times alleged in the Complaint, Alexander Kubes was a police officer

22  employed by the City of Phoenix acting within the course and scope of his employment, and

23  under color of state law. He is a "state actor" as that term is used under the jurisprudence of

24  42 U.S.C. § 1983.

25         17.     Andrew Locascio is an individual and a citizen of Arizona.

26         18.     At all times alleged in the Complaint, Andrew Locascio was a police officer

27  employed by the City of Phoenix acting within the course and scope of his employment, and

28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

19.     Airrion Moses is an individual and a citizen of Arizona.

20.     At all times alleged in the Complaint, Airrion Moses was a detention officer employed by the Maricopa County Sheriff's Office acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

21.     Isaac Perez is an individual and a citizen of Arizona.

22.     At all times alleged in the Complaint, Isaac Perez was a sergeant employed by the Maricopa County Sheriff's Office acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

23.     Danny Rubio is an individual and a citizen of Arizona.

24.     At all times alleged in the Complaint, Danny Rubio was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

25.     Michael Wood is an individual and a citizen of Arizona.

26.     At all times alleged in the Complaint, Michael Wood was a police officer employed by the City of Phoenix acting within the course and scope of his employment, and under color of state law. He is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

27.     In this Complaint, Defendants Bulldis, Corrales, Jessen, Kubes, Locascio, Moses, Perez, Rubio, and Wood are referred to collectively as "the Officer Defendants."

## JURISDICTION AND VENUE

28.     This Court has jurisdiction over Plaintiff's federal civil rights claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

29.     The events giving rise to this action occurred in Maricopa County, Arizona. Defendant City of Phoenix is a political subdivision of the State of Arizona. Maricopa County is a political subdivision of the State of Arizona.  On information and belief, Paul Penzone, the duly elected Sheriff of Maricopa County, and the Officer Defendants all reside within Maricopa County, Arizona. Thus, venue is proper in the District of Arizona under 28 U.S.C. § 1391(b).

30.     The events that form the basis of this Complaint occurred on or about January 1, 2021, in Maricopa County.

## JURY DEMAND

31.     Plaintiffs hereby demand a jury trial.

## FACTUAL ALLEGATIONS

### Phoenix Officers Arrest Akeem Terrell after he begins behaving oddly and refuses to leave a party.

32.     On January 1, 2021, Akeem Terrell died while in the custody of Phoenix Police Officers and Maricopa County Sheriff's Officers.

33.     Akeem Terrell was an African American man.

34.     Akeem had a history of mental illness.

35.     Phoenix Police arrested Akeem on January 1, 2021, after he began behaving bizarrely at a party.

36.     Witnesses stated that Akeem was expressing paranoid thoughts and making statements that did not make sense.

37.     When Phoenix Police Officers arrived at the scene, they spoke with Akeem.

38.     Based on Akeem's bizarre statements, the Phoenix Officers recognized that he was mentally ill or mentally disturbed.

39.     The Phoenix Officers advised Akeem that they would not arrest him if he would leave the location.

40.     When Akeem did not leave, Officers placed him under arrest.

41.     When Officers attempted to handcuff Akeem, Akeem pulled his hands away.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

42.    All of Akeem's behavior was consistent with his mental illness.

43.    Akeem was tall and overweight—approximately 6'2" and 433 lbs. Because of his size, Officers handcuffed his arms behind his back with two sets of handcuffs linked together. The handcuffs forced Akeem's hands behind his back in a strange, painful, and unnatural way.

44.    Akeem was uncooperative during his arrest.

45.    According to Officers at the scene, Akeem was not armed, did not attempt to escape, and did not strike or kick them at the time of his arrest, but he engaged in passive resistance by becoming "dead weight" or "going limp."

46.    Akeem was arrested for trespassing and for passively resisting arrest.

47.    The Officers placed Akeem in the back of a police SUV. According to the Officers, Akeem was in a face-down position in the back of the SUV, but then moved to lie on his side.

48.    The Officers then transported Akeem to the Maricopa County Jail.

49.    Before arriving at the Jail, Phoenix Officers notified the Jail that they were bringing in a "combative prisoner."

50.    They did not notify the Jail that they had a mentally ill man in the midst of a mental health crisis.

### Akeem's Arrival at the Maricopa County Jail

51.    On arrival at the Jail, Akeem continued to act in a manner that made clear that he was mentally ill.

52.    Phoenix and MCSO Officers then pulled Akeem out of the Phoenix SUV and carried him into the Jail.

53.    Akeem repeatedly expressed confusion about his location, stating at various times that he believed he was either in Tucson, Pinal County, or a different location other than the Maricopa County Jail.

54.    Akeem repeatedly yelled, "They're trying to kill me, they're trying to kill me."

55.    Akeem also stated, "This is just a game. This is just a show."

56.     Akeem's statements were consistent with his mental illness.

57.     The Officers recognized that Akeem was "out of it." He appeared to have difficulty standing on his own and maintaining his equilibrium.

58.     After dragging Akeem into the Jail, Officers deposited him on a padded surface near the intake search area.

59.     As the Officers dragged him into the Jail, Akeem's pants fell down exposing his underwear.

60.     Officers searched Akeem as he sat on the ground.

61.     Officers then lifted Akeem to a standing position and pulled up his pants as he continued to assert that Officers were going to kill him.

**Officers Move Akeem to An Isolation Cell**

62.     After Akeem was searched, MCSO Sergeant Perez and Officer Moses grabbed and held Akeem by the arms and shoulders and forcefully pushed him through the search area, down a hallway, and into an isolation "ISO" cell.



63.     As shown in the photo above, Sergeant Perez and Deputy Moses intentionally pulled upward on Akeem's handcuffed arms as they pushed him toward the ISO cell.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

64.     While Perez and Moses moved Akeem in this fashion, Phoenix Officers Rubio and Jessen followed.

65.     As Perez and Moses pushed Akeem to the ISO cell, they did not give Akeem any commands or orders.

66.     Perez and Moses did not explain where they were taking Akeem or why. Nor did they tell him what to do when he got there.

**In the ISO Cell, Multiple Officers Assault Akeem over a Three Minute Period**

67.      When Perez and Moses entered the ISO cell, they quickly pushed Akeem toward the wall without warning or explanation.

68.     Then, without warning or explanation, Perez, Moses, and Phoenix Officer Rubio pulled Akeem's ankles and swept his legs out from under him causing him to fall into the wall and then the ground.



69.     Because Akeem's hands were cuffed behind his back, his fall into the hard concrete was broken by his face and head.

70.     Upon striking the wall, Akeem slid down it as the Officers pulled his legs out from under him.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

71.     When his body struck the ground, Akeem landed on his side, but Sgt. Perez, Deputy Moses, Officer Rubio and Officer Jessen forced Akeem onto his stomach. As they did this, Officer Kubes and Officer Corrales stood by and watched.

72.     Placing handcuffed people in a prone position creates an immediate risk of death or serious bodily injury. This is especially true for heavyset, obese, or barrel-chested people. This position is known to cause positional asphyxia.

73.     The Officer Defendants claim that the purpose of using this force on Akeem, and all the force that followed, was to replace the two sets of handcuffs that already restrained Akeem with two sets of handcuffs that were in all respects identical to the handcuffs they were replacing. The sole difference between the two sets of handcuffs is that the replacement set were allegedly the property of Maricopa County rather than the City of Phoenix.

74.     It should be noted that at no time before his death did the Officer Defendants ever actually uncuff Akeem. The Officers applied the second set of handcuffs before removing the substantially identical Phoenix handcuffs.

75.     With Akeem on his stomach, Officer Rubio and Officer Jessen crossed Akeem's feet at the ankles. They then forcibly bent Akeem's legs backwards at the knee so that Akeem's heels were facing Akeem's buttocks.

76.     Officer Rubio then placed his bodyweight on Akeem's back bent legs.

77.     Placing weight on a prone restrained subject increases the risk of positional asphyxia.

78.     Even though Akeem's legs were not bound, by holding Akeem's legs in this fashion and then placing his own weight on Akeem's legs, Officer Rubio was placing Akeem in a "hogtie" position that is known to compromise an individual's ability to breathe and to cause death and serious bodily injury.

79.     While Officer Rubio had his bodyweight on Akeem's bent-back legs, Deputy Moses bent Akeem's handcuffed left hand backward and pulled it towards Akeem's head to inflict pain.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

80.     Sgt. Perez placed his knee on Akeem's lower back or right buttock forcing Akeem prone and interfering with his ability to breathe.

81.     At the same time, Phoenix Officer Jessen had his knee on the left side of Akeem's body, applying his bodyweight to hold Akeem prone. This also interfered with Akeem's ability to breathe.

82.     The Officer Defendants forced Akeem's head into the wall, placing pressure on his neck and bending it into a position that made it difficult for him to breathe.

83.     The below photo, zoomed in at 03:03:10, shows the position of Akeem's head and neck as Sgt. Perez and Officer Jessen drive their knees into Akeem, Officer Rubio sits on Akeem's back-bent legs, and Officer Jessen works to switch out the handcuffs. At this time, Officer Moses is bending Akeem's handcuffed hand backward and pulling it towards Akeem's head.



ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

84.     While Perez, Moses, Jessen, and Rubio applied unnecessary force to Akeem and held him in a prone hogtie position, Phoenix Officers Corrales, Kubes, and Locascio looked on, failing to intercede or summon medical care to protect Akeem.



85.     MCSO Officer Bulldis and Phoenix Officer Locascio were also watching from outside the door. They observed the excessive force being used on Akeem, and the fact that he was being forced down prone on the floor while Officers applied their weight to his back and held him in a hogtie position. Neither did anything to intervene or intercede.

86.     In an interview after Akeem's death, Officer Bulldis admitted that at this time, he recognized that Akeem was likely in or near a medical emergency.

87.     As of 3:04:44, Sgt. Perez and Officers Moses, Jessen, and Rubio had been forcing Akeem prone on the floor with his feet forced back toward his butt for approximately 1 minute and 40 seconds.

88.     At 3:04:44 Akeem, struggling to breathe and to stay alive, moved in a manner that Officer Rubio described as "bucking." The video shows Officer Rubio move briefly off of Akeem's legs. Rubio does not fall and was not injured by this movement.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

89.     Up until about 03:04:44, Akeem was speaking almost constantly in a manner that was obviously consistent with mental illness. One Officer describes his speech pattern as a repeating loop. Akeem repeats the names of several unknown individuals, he makes references to "Facebook," and "Facebook Live," he expresses confusion about where he is, he asks what he did wrong, and he repeatedly says, "they're trying to kill me."

90.     At approximately the same time as the movement, Akeem says words that sound like, "stay off, stay off of me." He then says words that sound like, "killing me, killing me."

91.     In response to Akeem's movement, which was nothing more than Akeem struggling to stay alive with the weight of multiple Officers holding him prone in a forced hogtie posture, Phoenix Officers Corrales and Kubes joined in the assault while Locascio looked on.



92.     In the above still frame, zoomed in at 3:04:53 on the video, MCSO Officers Perez and Moses (in tan) are shown being pressed into the wall by the pressure of the Phoenix Officers pressing on Akeem's body.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267



93.     In the above still frame, Officers Rubio, Corrales, and Kubes are applying their bodyweight to force Akeem's feet into his buttocks. Locascio stands looking on, his black gloved hands on the back of Officer Corrales.

94.     The unnecessary and unreasonable force that the Officer Defendants applied to Akeem's body and legs, forced Akeem's head and neck into the wall, further compromising Akeem's ability to breathe.

95.     At this time, Akeem was grunting and moaning in pain.

96.     Akeem's final words were "killing me, killing me."

97.     Eventually, he stopped moving and the only sound he made was the sound of shallow labored breathing, an obvious sign of a medical emergency and an immediate medical need.

98.     The Officer Defendants ignored Akeem's lack of movement and labored shallow breathing and continued to hold Akeem down in the forced hogtie position.

99.     While the Officers in the ISO cell applied excessive force to Akeem's body, the other Officer Defendants watched calmly through the open doorway, doing nothing to intervene.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

100.    All of the Officer Defendants knew that their actions or their failures to act could kill or seriously injure Akeem. They ignored that risk, either by continuing to apply force, or by standing by and watching, indifferent to Akeem's life.

101.    When Akeem struggled to move and to breathe, the Officer Defendants used more force on him.

102.    When Akeem's body spasmed, the Officer Defendants took this as a sign of "non-compliance" and applied additional pressure and bodyweight.

103.    Eventually, Akeem stopped moving at all. He said nothing.

104.    The Officer Defendants should have recognized that Akeem was not moving because he was in serious need of immediate medical attention as a result of the force they had used.

105.    But the Officer Defendants ignored his serious medical need.

### The Officer Defendants ignore Akeem's Obvious Medical Needs and Leave Him Handcuffed and Prone in the ISO Cell

106.    At 3:06:23 a.m., the Phoenix handcuffs had been replaced with the substantially identical Maricopa County handcuffs and the Officer Defendants backed out the door and left Akeem alone and motionless in the ISO cell.



107.    As the still image above shows, the Officer Defendants left Akeem prone and unmoving in obvious need of immediate medical attention.

108.    Sgt. Perez was the last Officer out the door.

109.    The Officer Defendants knew, or should have known, that leaving a handcuffed person prone and face-down creates a serious risk of death or serious bodily injury, including positional asphyxia.

110.    The Officer Defendants left Akeem alone in his cell with his hands cuffed tightly behind his back, his head pressed into the wall and his neck bent at a strange and unnatural angle for approximately six minutes.

111.    Akeem was in obvious medical distress, and in obvious need of immediate medical care. The Officer Defendants did not provide it.

112.    The Officer Defendants did not summon medical care.

113.    The Officer Defendants did not check Akeem's pulse.

114.    Before they left Akeem in the ISO cell, the Officer Defendants did not move Akeem to the "recovery position" (on his side) to lessen the risks of serious bodily injury or death that are created by being left in the prone position.

115.    Akeem was handcuffed and face-down on the floor of the ISO cell for a total of more than nine minutes (from 3:03:12 until 3:12:39).

116.    For the first three of those nine minutes (3:03:12 until 3:06:16), Officers were applying their bodyweight to his back and pushing his feet into his buttocks.

117.    For the final six of those nine minutes (from 3:06:16 until 3:12:39), Akeem was alone and unmoving.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

118.    At about 3:11:55 (below), Officer Moses and two other MCSO Officers reentered the ISO cell after one Officer observed that Akeem did not seem to be moving.



119.    The Officers were then joined by Phoenix Officer McKim. At this point, Akeem is still face-down and motionless with his head and neck forced into the wall.

120.    Officer McKim and the MCSO Officers then pulled Akeem away from the wall by his legs:



ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

121.    At 3:12:39, Officer Moses and two other MCSO Officers, aided by Phoenix Officer McKim moved Akeem onto his side:



122.    With Akeem on his side, Officer Moses determined that Akeem had no pulse and summoned medical care.

123.    At 3:13:17, Officers returned Akeem to the face-down position so that the Maricopa County handcuffs could be removed.



124.    Officers then rolled Akeem onto his back and handcuffed his hands in front of his body even though he had no pulse and had not moved in some time:



125.    Only after they finished handcuffing Akeem's hands in front of his body, did the Officer Defendants begin performing CPR or other lifesaving measures.

126.    Akeem was removed from the ISO cell on a gurney at approximately 3:41:17 a.m. by Phoenix Fire Department personnel.

127.    Akeem was transported to Banner University Medical Center where he was pronounced deceased on January 1, 2021.

128.    The Officer Defendants caused Akeem's death through their use of excessive and unnecessary force and their deliberate indifference to Akeem's obvious and serious medical needs, their failure to provide or summon medical care, and their unnecessary and unreasonable delay in summoning medical care.

129.    Akeem was never "booked into" or admitted to the Maricopa County Jail.

130.    At all relevant times, Akeem was either an "arrestee" protected by the Fourth Amendment, or a "pretrial detainee" protected by the Fourteenth Amendment.

### Maricopa County and Sheriff Penzone's Policy, Customs and Procedures and Their Ratification of Akeem Terrell's Death

131.    Defendants Maricopa County and Sheriff Penzone are responsible for training and supervising Officers regarding the reasonable use of force.

132.    The Sheriff and the County have failed to properly train and supervise their Officers regarding the reasonable use of force.

133.    The Sheriff and the County have a policy, custom, or practice of training and allowing Officers to use certain submission techniques, including prone positioning, which poses a significant risk of asphyxiation and death, resulting in unreasonable uses of force.

134.    The Sheriff and the County's policy, custom, or practice of training and allowing Officers to utilize submission techniques such as prone positioning increases the incidence of uses of unreasonable force.

135.    The Sheriff and the County are responsible for training and supervising Officers regarding interaction with mentally ill or emotionally disturbed citizens.

136.   The Sheriff and the County have failed to properly train and supervise its Officers regarding Officer interaction with the mentally ill or emotionally disturbed citizens.

137.   The Sheriff and the County have failed to properly train and supervise its Officers regarding the dangers of positional asphyxia and the danger signs of positional asphyxia.

138.   Sheriff and County policy requires a professional standards investigation after any death of a person in custody to determine whether its Officers have violated any County policy.

139.   On information and belief, almost two years after Akeem's death, the County and the Sheriff have not completed an internal affairs or professional standards investigation into Akeem's death.

140.   On information and belief, the County and the Sheriff have not disciplined, terminated, or retrained any of the employees who caused Akeem Terrell's death.

141.   The County's and the Sheriff's failures to investigate, discipline, or retrain the Officers who caused Akeem's death indicates that the Officers' actions were standard operating procedure and amount to the official policy of Maricopa County.

**Defendant City of Phoenix's Policies, Customs, and Procedures and Their Ratification of Akeem Terrell's Death**

142.   Defendant City of Phoenix is responsible for training and supervising Phoenix Police Officers regarding the reasonable use of force.

143.   Defendant City of Phoenix has failed to properly train and supervise its Officers regarding the reasonable use of force.

144.   The City of Phoenix has a policy, custom, or practice of training and allowing Officers to use certain submission techniques, including prone positioning, which poses a significant risk of asphyxiation and death, resulting in unreasonable uses of force.

145.   The City of Phoenix's policy, custom, or practice of training and allowing Officers to utilize submission techniques such as prone positioning increases the incidence of uses of unreasonable force.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

146.   Defendant City of Phoenix is responsible for training and supervising Phoenix Officers regarding interaction with mentally ill or emotionally disturbed citizens.

147.   Defendant City of Phoenix has failed to properly train and supervise its Officers regarding Police Officer interaction with the mentally ill or emotionally disturbed citizens.

148.   Defendant City of Phoenix has failed to properly train and supervise its Officers regarding the dangers of positional asphyxia and the danger signs of positional asphyxia.

149.   The City of Phoenix has created a culture of impunity that permits Officers to use excessive and unnecessary force without fear of discipline or oversight.

150.   The City of Phoenix has created this culture of impunity by among other things:

• Failing to track Officer uses of force to identify Officers who use force more than other Officers and to initiate an early warning system regarding such Officers.

• Adopting a policy, custom, or practice of delaying and slowing down the release of information relating to incidents involving Officer uses of force in order to prevent the public and the victims of police violence from learning about the real facts involved in police uses of force.

• Adopting a policy, custom, or practice of "purging" Officer discipline records so that Officers who are the subject of repeated complaints and investigations cannot be identified and the victims of police violence will have difficulty demonstrating the City of Phoenix's custom, pattern, and practice of using excessive force.

• Adopting a policy, custom and practice of failing to fully investigate incidents involving Officer uses of force and in-custody deaths.

• Adopting a policy, custom and practice of failing to discipline, terminate, and/or retrain Officers who use excessive force.

151.    The City of Phoenix adopted the policies, customs, and practices set forth in the paragraph above in order to prevent the public from learning about the extent of police excessive force incidents and to prevent adverse publicity.

152.    City of Phoenix policy requires a professional standards investigation after any death of a person in custody to determine whether Officers have violated City policy.

153.    On information and belief, almost two years after Akeem's death, the City has not completed an internal affairs investigation.

154.    On information and belief, the City has not disciplined, terminated, or retrained any of its employees involved in the death of Akeem Terrell.

155.    The City's failure to investigate, discipline, or retrain the Officers who caused Akeem's death indicates that the Officers' actions were standard operating procedure and amount to the official policy of the City of Phoenix.

**Defendant City of Phoenix's Long History of Death by Prone Restraint**

156.    Defendant City of Phoenix has known for years that placing a handcuffed individual face-down for any period of time poses a serious risk of sudden death.

157.    Defendant City of Phoenix has a long history of causing deaths in this fashion, including, but not limited to, the following:

- On August 4, 2020, multiple Phoenix Officers killed Ramon Timothy Lopez when they handcuffed and RIPP restrained him and held him face-down on the street.

- On February 6, 2019, a naked Casey Wells died after being RIPP restrained and placed face-down with Phoenix Police Officers on his back and his neck.

- On January 4, 2017, Muhammad Muhaymin died in the custody of Phoenix Police Officers with at least three Officers on his legs and back, with another applying a knee to his head and neck while he cried out, "I can't breathe."

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

- On December 25, 2014, Edgardo Figueroa died after he was handcuffed and left face-down in the back of a Phoenix police vehicle.

- In December 2011, Ernest "Marty" Atencio died after he was handcuffed and held face-down by Phoenix Police and Maricopa County Sheriff's Officers.

158. Despite this history and its knowledge of the risks, Defendant City of Phoenix continues to train its Officers that they can place handcuffed citizens face-down even though it knows that doing so creates a significant risk of injury and death.

159. Despite this history and its knowledge of the risks, Defendant City of Phoenix continues to train its Officers that they can apply pressure or bodyweight to prone face-down citizens, including the mentally ill, who are already handcuffed or otherwise restrained.

160. Defendant City of Phoenix has repeatedly received notice that these practices and customs result in unnecessary deaths, but has failed to change its policies, customs, and practices to prevent such deaths.

161. In repeated incidents where City of Phoenix personnel have caused deaths by prone restraint, Defendant City of Phoenix has failed to investigate or discipline its employees, and has thereby ratified and adopted death by prone restraint as an official custom and practice.

## COUNT ONE – 42 U.S.C. § 1983
### The Estate's claim for violation of Akeem Terrell's
### Fourth Amendment right to be free from excessive force
### (As to the Officer Defendants)

162. The foregoing paragraphs are incorporated as if fully set forth herein.

163. Akeem Terrell had a Fourth Amendment right to be free from excessive force.

164. The Officer Defendants violated Akeem's Fourth Amendment rights when, acting in concert with one another, they used force and bodyweight to hold him in a prone position, forced his feet towards his buttocks in a hogtie position, forced his head and neck against the wall, and caused pain and suffering and death.

**ROBBINS & CURTIN, P.L.L.C.**
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

165.   The Officer Defendants violated Akeem's Fourth Amendment rights when they failed to intervene, de-escalate, or disengage the other Officers from their use of unreasonable and excessive force.

166.   The Officer Defendants violated Akeem's Fourth Amendment rights when they failed to check to see if he was breathing or had a pulse before leaving him alone in the ISO cell.

167.   The Officer Defendants violated Akeem's Fourth Amendment rights when they failed to summon medical care to address Akeem's obvious medical needs.

168.   The Fourth Amendment violations of each of the Officer Defendants were independent moving forces of Akeem Terrell's death.

169.   Because the Officer Defendants' actions were done knowingly, intentionally, maliciously, and/or recklessly, Plaintiff is entitled to recover compensatory and punitive damages.

**COUNT TWO – 42 U.S.C. § 1983**
**The Estate's claim for excessive force, failure to protect, and deliberate indifference to obvious medical needs in violation of the Fourteenth Amendment**
**(As to the Officer Defendants)**

170.   The foregoing paragraphs are incorporated as if fully set forth herein.

171.   This count is pled in the alternative to Count One, in the event that Akeem Terrell is determined to have been a pretrial detainee at the times when force was used.

172.   Akeem Terrell had a Fourteenth Amendment right to be free from excessive force.

173.   The Officer Defendants violated Akeem's Fourteenth Amendment rights when, acting in concert with one another, they used force and bodyweight to hold him in a prone position, forced his feet into his buttocks in a hogtie position, forced his head and neck against the wall, and caused pain and suffering and death.

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

174.    The Officer Defendants violated Akeem's Fourteenth Amendment rights when they failed to intervene, de-escalate, or disengage the other Officers from their use of unreasonable and excessive force.

175.    The Officer Defendants violated Akeem's Fourteenth Amendment rights when they failed to check to see if he was breathing or had a pulse before leaving him alone in the cell.

176.    The Officer Defendants violated Akeem's Fourteenth Amendment Rrghts when they failed to summon medical care to address Akeem's obvious medical needs.

177.    The Fourteenth Amendment violations of each of the Officer Defendants were independent moving forces of Akeem Terrell's death.

178.    Because the Officer Defendants' actions were done knowingly, intentionally, maliciously, and/or recklessly, Plaintiff is entitled to recover compensatory and punitive damages.

## COUNT THREE – 42 U.S.C. § 1983
### KTW's claim for violation of Fourteenth
### Amendment right to familial society and companionship
### (As to the Officer Defendants)

179.    The foregoing paragraphs are incorporated as if fully set forth herein.

180.    The reckless, intentional, and deliberate acts and omissions of the Officer Defendants were the direct legal cause of the deprivation of KTW's constitutionally protected rights under the Fourteenth Amendment to the care, companionship, and familial society of Akeem Terrell.

181.    The acts and omissions of the Officer Defendants shock the conscience. The circumstances were such that actual deliberation was practical, and the Officer Defendants were deliberately indifferent.

182.    In the alternative, the Officer Defendants acted with a purpose to cause harm unrelated to any legitimate law enforcement objective.

183.    Plaintiff KTW was damaged as the result of the loss of her constitutionally protected right to the care, companionship, and familial society of her father, Akeem Terrell.

Page 25 of 28

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267

**COUNT FOUR – 42 U.S.C. § 1983**
**Robert Yates' claim for violation of Fourteenth**
**Amendment right to familial society and companionship**
**(As to the Officer Defendants)**

187.    The foregoing paragraphs are incorporated as if fully set forth herein.

188.    The reckless, intentional, and deliberate acts and omissions of the Officer Defendants were the direct legal cause of the deprivation of Robert Yates' constitutionally protected rights under the Fourteenth Amendment to the care, companionship, and familial society of Akeem Terrell.

189.    The acts and omissions of the Officer Defendants shock the conscience. The circumstances were such that actual deliberation was practical, and the Officer Defendants were deliberately indifferent.

190.    In the alternative, the Officer Defendants acted with a purpose to cause harm unrelated to any legitimate law enforcement objective.

191.    Plaintiff Robert Yates was damaged as the result of the loss of his constitutionally protected right to the care, companionship, and familial society of his son, Akeem Terrell.

**COUNT FIVE – 42 U.S.C. § 1983**
**Plaintiffs' *Monell* claims for violation of Fourth**
**and Fourteenth Amendment rights**
**(As to Defendant City of Phoenix)**

192.    The foregoing paragraphs are incorporated as if fully set forth herein.

193.    The City of Phoenix was deliberately indifferent to the Fourth and Fourteenth Amendment rights of members of the public, including Akeem Terrell, KTW, and Robert Yates.

194.    The City of Phoenix's unconstitutional policies, customs, procedures, and training were a moving force that caused the death of Akeem Terrell and the violations of his rights under the Fourth and Fourteenth Amendments.

195.    The City of Phoenix's unconstitutional policies, customs, procedures, and training were a moving force that caused the deprivations of Akeem Terrell's, KTW's, and

Roberts Yates' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

196.   The City of Phoenix's unconstitutional policies, customs, procedures, and training caused the deprivations of KTW's and Robert Yates' rights to familial society and companionship under the Fourteenth Amendment to the United States Constitution.

197.   The City of Phoenix is liable for all damages arising from the constitutional violations it caused.

### COUNT FIVE – 42 U.S.C. § 1983
#### *Monell* Claims for violation of Fourth and Fourteenth Amendment rights
#### (As to Defendants Paul Penzone and Maricopa County)

198.   The foregoing paragraphs are incorporated as if fully set forth herein.

199.   Sheriff Penzone and Maricopa County were deliberately indifferent to the Fourth and Fourteenth Amendment rights of members of the public, including Akeem Terrell, KTW, and Robert Yates.

200.   Sheriff Penzone and Maricopa County's unconstitutional policies, customs, procedures, and training were a moving force that caused Akeem Terrell's death and the violations of his rights under the Fourth and Fourteenth Amendments..

201.   Sheriff Penzone and Maricopa County's unconstitutional policies, customs, procedures, and training were a moving force that caused the deprivations of Akeem Terrell's, KTW's, and Robert Yates' rights under the Fourth and Fourteenth Amendments to the United States Constitution.

202.   Sheriff Penzone and Maricopa County's unconstitutional policies, customs, procedures, and training caused the deprivation of KTW's and Robert Yates' rights to familial society and companionship under the Fourteenth Amendment to the United States Constitution.

203.   Sheriff Penzone and Maricopa County are liable for all damages arising from the constitutional violations they caused.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.     For general damages, including but not limited to the loss of love, affection, companionship, and guidance resulting from the death of Akeem Terrell, pain, grief, sorrow, anguish, stress, shock, and mental suffering already experienced and reasonably probable to be experienced in the future, and economic losses and loss of income, hedonic damages, and Akeem Terrell's pre-death pain and suffering and loss of life;

B.     For special damages, including but not limited to the expenses of medical treatment, burial, and funeral;

C.     For punitive damages against the Officer Defendants to the extent permitted by law;

D.     For pre- and post-judgment interest to the extent permitted by law;

E.     For attorneys' fees and taxable costs under 42 U.S.C. § 1988 to the extent permitted by law; and

F.     Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: December 30, 2022

ROBBINS & CURTIN, p.l.l.c.

By:     /s/ Jesse M. Showalter
        Joel B. Robbins
        Jesse M. Showalter
        301 E. Bethany Home Road
        Suite B-100
        Phoenix, Arizona 85012
        *Attorneys for Plaintiff*

ROBBINS & CURTIN, P.L.L.C.
301 East Bethany Home Road, Suite B-100
Phoenix, Arizona 85012
Telephone: (602) 400-4400 ♦ Fax: (602) 265-0267